# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 12-05928-JW |
| Jerome Douglas and Michelle Hattie Douglas, | Adv. Pro. No. 12-80233-JW |
| Debtors. | Chapter 13 |
| Jerome Douglas and Michelle Hattie Douglas, | **ORDER** |
| Plaintiffs, | |
| v. | |
| Lorverry Alford d/b/a Alfords Used Cars | |
| Defendant. | |

THIS MATTER comes before the Court upon the Adversary Complaint (hereinafter "Complaint") filed by Jerome Douglas and Michelle Hattie Douglas (hereinafter "Debtors"). The Court conducted a trial regarding the Complaint, at which Debtors, Debtors' attorney and Defendant's attorney appeared. Defendant did not personally appear, although his attorney actively participated during the trial. In the Complaint, Debtors allege that Defendant repossessed a 2008 Cadillac DTS after Debtors filed for bankruptcy protection. Originally, Debtors sought both the return of the vehicle as well as damages for Defendant's willful violation of the automatic stay pursuant to 11 U.S.C. §362(k).[1] Following previous hearings on a Motion for Immediate Turnover and Motion for Contempt, Defendant turned over the vehicle to Debtors. At trial, Debtors asserted their claim for damages stemming from the post-petition repossession and the period during which Defendant retained the vehicle.

In response to Debtors' Complaint, Defendant argues that, as a result of a mistake in the address,

---

[1] Further references to the Bankruptcy Code shall be by section number only.

1

he did not receive written notice of Debtors' bankruptcy. As such, Defendant argues that it was not a willful violation of the stay because he repossessed the vehicle without knowledge of the bankruptcy. Defendant also disputed the amount of damages sought by Debtor.

Having considered the pleadings and heard the arguments of counsel at trial, this Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. Debtors filed a voluntary petition ("Petition") for relief under chapter 13 of Bankruptcy Code on September 25, 2012.

2. At the time of filing the Petition, Debtors owned and had possession of a 2008 Cadillac DTS ("the Vehicle"). Debtors purchased the vehicle from Defendant on December 20, 2010, as evidenced by a written installment contract between the parties. The Vehicle was Debtors' only means of transportation.

3. Debtors' chapter 13 plan, filed on September 25, 2012, proposes to pay the claim of Defendant in full with 5.25% interest. The plan was confirmed by Order of this Court entered on December 18, 2012.

4. In the mailing matrix supplied to the Court when the Petition was filed, Debtors listed Defendant's address as 904 St. Charles Road, Bishopville, SC 29010. The correct address should have been 904 Manville St. Charles Road, Bishopville, SC 29010. The Bankruptcy Noticing Center mailed the Notice of Bankruptcy Filing to the incorrect address on September 29, 2012. Debtors' attorney mailed a copy of the Chapter 13 Plan to Defendant at that same address on September 25, 2012. Neither of those mailings was returned by the U.S. Postal Service for insufficient address.

5. On October 4, 2012, an employee at the office of Debtors' attorney called Defendant and informed him of the bankruptcy filing. The employee was calling in response to a request by Mrs. Douglas, who had previously received a call from Defendant regarding the account, at which time she had also informed Defendant of the bankruptcy filing. The employee not only informed Defendant of the bankruptcy filing,

2

but she also instructed Defendant not to contact Debtors in the future.

6. On October 21, 2012, Defendant repossessed the Vehicle following a church service attended by Mrs. Douglas. Mrs. Douglas was present during the repossession and again informed Defendant of the bankruptcy filing. The uncontroverted testimony at trial was that Defendant was verbally and physically abusive to Mrs. Douglas. Defendant pushed Mrs. Douglas, jumped in the car while she was trying to drive away, disconnected the battery as the car was being driven and then scratched her arm while grabbing the key from her.

7. On October 22, 2012, Debtors' attorney mailed by certified mail a letter to Defendant asking for the return of the Vehicle. The letter included the Notice of Bankruptcy Filing, the Chapter 13 Plan and proof of insurance on the Vehicle. This letter was addressed incorrectly but, as evidenced by the return receipt submitted at trial, the post office corrected the address and attempted delivery to the proper address. This letter was signed for by Defendant on November 8, 2012, also as evidenced by the certified return receipt.

8. After being unable to contact Defendant by telephone and receiving no response to the letter, Debtors filed this adversary proceeding on October 24, 2012, which included a Motion for Immediate Turnover. Debtors' attorney served this Notice of Emergency Hearing by U.S. overnight mail, return receipt requested. The evidence shows that, although the mail was addressed incorrectly, the post office again corrected the address and attempted delivery at the proper address. The mailing was not claimed by Defendant. At the same time, the notice was mailed by First Class U.S. Mail to the incorrect address. This mailing was never returned to the sender as undelivered.

9. On November 6, 2012, this Court held a hearing regarding the Motion for Immediate Turnover. No one appeared at the hearing on behalf of Defendant. The Court issued an Order requiring turnover of the Vehicle which was served by Debtors' attorney by certified mail, return receipt requested. The post

office, yet again, changed the address and attempted delivery at the proper address, but this mailing was not claimed by Defendant.

10. On November 10, 2012, a letter signed by Defendant was mailed to Debtors' attorney, within which Defendant acknowledged knowledge of the bankruptcy, at least as of that date. This letter was received by Debtors' attorney on November 20, 2012.

11. On November 19, 2012 and November 20, 2012, Debtors' attorney spoke to Defendant by telephone regarding Debtors' bankruptcy case.

12. On November 21, 2012, with Defendant still having failed to return the Vehicle, Debtors' attorney filed a Motion for Contempt. A hearing on the Motion was held on December 6, 2012. An attorney for the Defendant timely appeared at the hearing but Defendant did not arrive at the courthouse until the hearing had come to a conclusion. As a result of the hearing, the Court ordered Defendant to return the Vehicle to a designated church in Bishopville, SC no later than 5:00 p.m. that same day.

13. Defendant did return the Vehicle that day as ordered, but Defendant did not leave the only car key as had been agreed upon by the attorneys for the parties. As a result, Debtors had to tow the Vehicle back to their home.

14. After the parties' attorneys communicated regarding the key but came to no resolution, Debtors were forced to request a replacement key from a local Cadillac dealership.

15. The car was towed a second time to the car dealership, where it remained while the parts were being ordered. Debtors finally got the Vehicle with its key on January 7, 2014.

16. In total, Debtors were without the Vehicle for eleven weeks.

17. At the trial and at the previous hearing, Defendant's attorney admitted that the Vehicle had been repossessed on October 21, 2013, but argued that the repossession was a result of Defendant's lack of knowledge of the bankruptcy filing.

4

18.  Evidence was also presented at trial indicating that Defendant used the Vehicle after its repossession for his personal use, as the mileage had increased by 2,488 miles from the time of the repossession to the time of its return.

19.  Debtors presented evidence of the following damages as a result of the repossession: $1,241.21 to Enterprise Rental Car for replacement transportation while being without the Vehicle; $656.26 to King Cadillac for the replacement key and related costs; $300.00 to Spider BP Towing; mileage and parking reimbursement for 3 trips to Columbia totaling $267.30; and $1,405.72 mileage reimbursement for the 2,488 miles put on the Vehicle while in Defendant's possession.[2]  Therefore, Debtors' seek actual damages in the amount of $8,168.65 for these items.

20.  Debtors' attorney also presented an affidavit to this Court detailing attorney's fees and costs of $4,319.96 through the hearing.  The Court instructed Debtors' attorney to add $200 to cover the time associated with the preparation of a proposed order, bringing the total attorney's fees and costs to $4,319.96.

## CONCLUSIONS OF LAW

**I.  Was the post-petition repossession of the Vehicle a willful violation of the automatic stay pursuant to §362(k)?**

The parties do not dispute that the repossession of the Vehicle occurred post-petition and therefore was in violation of the automatic stay.  The primary issues before the Court are whether Defendant willfully violated the stay with the repossession and continued retention of the Vehicle after learning of Debtors' bankruptcy case and, if so, what damages Debtors suffered as a result.

The Fourth Circuit defines a willful violation of the automatic stay as occurring when a creditor knows of the pendency of a bankruptcy case and intentionally attempts to continue to collection procedures in spite of it.  See Budget Serv. Co. v. Better Homes of Virginia, Inc., 804 F.2d 289, 293 (4th

---

[2] Debtors used the current IRS standard of 56.5 cents per mile to determine a monetary value for mileage.

Cir. 1986) (upholding a finding of a willful violation of the automatic stay where the creditor was served with written notice of the bankruptcy filing yet the creditor repossessed one Vehicle post-petition and attempted to repossess two others post-petition).  A willful violation does not require specific intent to violate the automatic stay; rather, a willful violation occurs when the creditor is aware of the bankruptcy case but nonetheless intentionally attempts to collect on a debt. Weatherford v. Timmark (In re Weatherford), 413 B.R. 273, 285 (Bankr. D.S.C. 2009). The moving party bears the burden of proof in an action for violation of the automatic stay and must prove the violation by clear and convincing evidence. See Brockington v. Citizens and S. Nat'l Bank of South Carolina (In re Brockington), 129 B.R. 68, 70 (Bankr. D.S.C. 1991).

In order to prove that the stay violation was willful, Debtors, as the moving parties, must demonstrate that Defendant had knowledge of Debtors' bankruptcy.  Defendant argues that he did not have such knowledge of the bankruptcy at the time of the repossession because the written notices were sent to an incorrect address.   The uncontroverted testimony presented at the hearing demonstrated that Defendant received at least two oral notices of the bankruptcy filing on October 4, 2012—one from Debtors and a second from an employee at the office of Debtors' attorney.  Additionally, one of the debtors, Mrs. Douglas, was present on October 21, 2012 when the Vehicle was repossessed, at which time Defendant was told for a third time about the bankruptcy.[3]  Once oral notice of the bankruptcy filing was received, Defendant should have immediately stopped the repossession efforts and inquired further as to Debtors' pending bankruptcy case. See Brockington, 129 B.R. at 71 (finding a willful violation of the automatic stay when, at the time of repossession, the creditor had not yet received notice of the bankruptcy case but the debtors informed the creditor's repossessing agent of their filing); see also Bolen v. Mercedes Benz, Inc. (In re Bolen), 295 B.R. 803 (Bank. D.S.C. 2002) (finding that a willful violation

---

[3] At the hearing, Debtors introduced testimony regarding these oral communications to Defendant, all of which was uncontroverted.

6

of the stay occurred after an oral notification by the debtor to the repossessing agent). Defendant received additional written notice of the bankruptcy by letter from Debtors' counsel, which enclosed a copy of the Notice of Bankruptcy Filing, on November 8, 2012, as evidenced by a certified mail receipt for that letter signed by Defendant. Further, a letter acknowledging the bankruptcy was signed by Defendant on November 10, 2012. Even with written notice of the bankruptcy and despite the earlier order of turnover entered on November 6, 2013, Defendant still refused to return the Vehicle until a hearing was held on Debtors' Motion for Contempt on December 6, 2012.

Having determined that Defendant had knowledge of the bankruptcy, the Court must next determine whether Defendant intentionally continued its collection attempts after having received notice of the bankruptcy case. This Court finds that Defendant retained the Vehicle from October 21, 2012 until December 6, 2012, despite being notified of the bankruptcy at the time of repossession and on multiple occasions following the repossession. Furthermore, by failing to provide the only key to the Vehicle at the time Defendant returned the Vehicle to Debtors, he in effect deprived Debtors of use of the Vehicle until January 7, 2013, when Debtors obtained a new key and the car was returned to their use.

Based upon the foregoing, this Court concludes that Defendant violated the automatic stay by intentionally repossessing the Vehicle post petition and continuing to retain repossession of Debtors' Vehicle with knowledge of their bankruptcy. The Court notes that, when there is uncertainty, creditors generally have a duty to inquire on their own as to whether a bankruptcy has been filed. See Bolen, 295 B.R. at 810. Once Defendant was told about the bankruptcy, he had a duty to mitigate his mistake by returning the Vehicle. Not only did Defendant fail to mitigate his mistake, but he ignored both repeated requests by Debtors' attorney and this Court's turnover order.

**II.     What is the amount of damages Debtors suffered as a result of Defendant's willful violation of the automatic stay?**

The Court believes that an award of damages is appropriate in this case. Debtors were deprived of their sole means of transportation for eleven weeks. In order to conduct their normal lives, including going to work and other daily activities, Debtors were forced to rely on the assistance of friends at first and ultimately had to rent a car. Pursuant to 11 U.S.C. § 362(k), this Court has authority to award a party who is injured by a willful violation of the automatic stay actual damages, attorney's fees and costs, and punitive damages.

Regarding actual damages, Debtors are seeking reimbursement for the costs of the rental car, towing charges, key replacement, mileage and parking in making three trips to Columbia for the three separate hearings, and the mileage placed on the Vehicle while in Defendant's possession. Based on the evidence submitted at trial, this Court finds that Debtors incurred the following actual damages: $1,241.21 to Enterprise Rental Car for replacement transportation while being without the Vehicle; $656.26 to King Cadillac for the replacement key and related costs; $300 to Spider BP Towing for two separate tows; mileage and parking reimbursement for 3 trips to Columbia totaling $267.30; and $1,405.72 mileage reimbursement for the 2,488 miles put on the Vehicle while in Defendant's possession.[4]

Based upon the testimony and Affidavit of Counsel, this Court also finds that Debtors necessarily incurred attorney's fees and costs of $4,319.96 in this action to recover the Vehicle.

Finally, the Court concludes that punitive damages are warranted in this case. See Bolen, at 811; see also Diviney v. Nationsbank of Texas (In re Diviney), 225 B.R. 762, 778 (BAP 10th Cir. 1998)(affirming a punitive damages award of $40,000 for the creditor's post-petition repossession, retention, and sale of the debtors' vehicle despite notice that the debtors' case was reinstated and active).

---

[4] Debtors used the current IRS standard of 56.5 cents per mile to determine a monetary value. The Court finds that this mileage rate is a reasonable method to measure the value of Debtors' loss resulting from Defendant's use of the Vehicle.

In this case, Defendant ignored demands for turnover and this Court's order of turnover and, as a result, Debtors were deprived of their Vehicle for 11 weeks. There is also uncontroverted testimony that Defendant was verbally abusive to and used physical force on Mrs. Douglas. Moreover, despite this Court's order, Defendant did not return the Vehicle until after a contempt hearing was held and, when the Vehicle was returned, Defendant kept the only key. These actions show a complete disregard for the bankruptcy law, the automatic stay, and the direct orders of this Court. The Court finds that punitive damages are appropriate in this case due to the egregious nature of Defendant's conduct and to ensure his future compliance with the Court's orders and bankruptcy law. To ignore both the automatic stay and this Court's turnover order, as Defendant did in this case, warrants a serious punitive damages award to encourage Defendant to change his policies and also to deter him and other creditors from behaving in a similar fashion in the future. Therefore, the Court finds that Debtors are entitled to punitive damages of $8,500.00.

At the hearing, counsel for Debtors anticipated difficulty in collecting any judgment due to Defendant's record of noncompliance with Court orders and the fact that Defendant has moved to and resides in another state. Therefore, Debtors requested that, upon any failure to pay damages as ordered by the Court, Defendant's claim against the estate be denied.[5]

## **CONCLUSION**

Based on the foregoing, it is hereby ordered that Debtors are entitled to actual damages, including reasonable attorney's fees, in the total amount of $12,488.61, and punitive damages of $8,500 for Defendant's willful violation of the automatic stay. A judgment is therefore entered in the total amount of $20,988.61 against Lorverry Alford, individually and doing business as Alford's Used Cars. Defendant shall submit payment of such judgment to Debtors, via their counsel, within fourteen (14) days of the entry of this Order. The Trustee shall make no further distribution to Defendant until notified by Debtors'

---

[5] Defendant has filed a Proof of Claim in the amount of $20,800, secured by the Vehicle

counsel that such payment has been received by Debtors or further order of the Court.[6] To the extent Debtors seek to offset payments towards Defendant's claim, they should file an objection to said claim as soon as possible but no later than fourteen (14) days after the entry of this Order.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**03/08/2013**



Entered: 03/08/2013

US Bankruptcy Judge
District of South Carolina

---

[6] Upon notification that full payment of the judgment has been received by Debtors, the Trustee may make distributions to Defendant on his claim with the interest rate provided for in the plan. Nothing ordered herein shall restrict Debtors' ability, in the normal course of Chapter 13 procedure, to object to Defendant's proof of claim and be heard at some later date, should Debtors conclude that such action would be appropriate in the future